**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-084**

**Filing Date:  May 28, 2015**

**Docket No. 33,587**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**MARK SANCHEZ,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret McLean, Assistant Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Steven J. Forsberg, Assistant Appellate Defender
Santa Fe, NM

Sue Anne Herrmann, Adjunct Professor of Law
Santa Fe, NM
John Campbell, Practicing Law Student
Santiago Solis, Practicing Law Student

for Appellant

**OPINION**

**HANISEE, Judge.**

1

**{1}** Defendant appeals from the district court's judgment and sentence convicting him for trafficking methamphetamine by possession with the intent to distribute, which was entered pursuant to a conditional plea agreement. In the plea agreement, Defendant reserved the right to appeal the denial of his motion to suppress the evidence obtained from Defendant's vehicle beginning with the officer's warrantless seizure of a bag of pills that Defendant attempted to hide from the officer. We agree with Defendant that the officer lacked probable cause to seize the bag of pills. We reverse the district court's denial of the motion to suppress and remand for further proceedings.

## I.    BACKGROUND

**{2}** The following facts were established by Officer McCarty, the only witness who testified at the suppression hearing. While on routine patrol during his graveyard shift, Officer McCarty noticed a black Infiniti with Colorado license plates stopped at an intersection. The officer "ran the number of the license plate, and it came back expired." On this basis, Officer McCarty initiated and completed a traffic stop. When Officer McCarty approached the driver-side door, he asked for Defendant's driver's license, registration, and proof of insurance. Defendant leaned over toward the passenger's seat, where a passenger was seated, and appeared to be searching for his paperwork in the console or reaching for the glove box. During this time, the officer shone his flashlight around the inside of the vehicle to make sure there were "no weapons or anything." The officer observed a clear, plastic bag on the floorboard of the vehicle by Defendant's right foot with what appeared to be "a capsule or a pill of some kind in it." Later in his testimony, Officer McCarty stated that he observed two pills that were different kinds, but were similar. Defendant's foot obscured the rest of the bag from the officer's view.

**{3}** The officer asked Defendant what the pills were in the bag at his feet. Defendant placed his foot on top of the bag, tried to slide it underneath the driver's seat, and said, "What bag?" Officer McCarty immediately removed Defendant from the vehicle, explaining that he was afraid Defendant would "damage [the pills] or get [them] where [the officer could not] get a hold of them." Officer McCarty then reached into the vehicle and removed the bag, explaining that he did not want the passenger to take it.

**{4}** The officer admitted that he could not identify the two pills he saw in the bag before removing the bag from the vehicle. The officer testified that he had specific training relevant to identification of pills while he was a full-time paramedic for thirteen years prior to his employment as a law enforcement officer, and that he had maintained his license because he continued to work part-time as a paramedic for the San Juan County SWAT team. Based on this training, the officer determined that the two pills he saw in the bag prior to seizing it were prescription medications. He could not determine the type of prescription medications, however, and had not asked whether Defendant was lawfully in possession of the prescription medications before removing them from the vehicle. These are the facts that form the basis for our analysis.

**{5}** We note that after the officer took the bag, he could see there were several different kinds of pills in it. The officer began questioning Defendant about the pills. Defendant stated that the pills were prescribed to him by his doctor for anxiety and a back injury. Defendant stated that the prescription pill bottles were at his house. Officer McCarty's testimony does not clearly explain how he proceeded after questioning Defendant in the patrol car. It appears that he arrested Defendant, performed an inventory search, sealed Defendant's vehicle, and obtained a search warrant. Evidence discovered in the course of the subsequent searches of the vehicle formed the basis for Defendant's conviction for trafficking methamphetamine.

**{6}** Argument at the suppression hearing and in motions focused entirely on the threshold seizure of the bag of pills and whether the seizure was supported by probable cause and exigency. The parties agreed that the facts were appropriately analyzed under the plain view doctrine and the need for exigency under New Mexico case law. The defense focused on the lack of probable cause under the plain view doctrine, arguing that the incriminating nature of the pills was not immediately apparent to Officer McCarty. The State, apparently drawing inferences from Officer McCarty's testimony, argued that the officer suspected the pills were contraband and, coupled with Defendant's attempt to hide the pills, Officer McCarty had the requisite probable cause. The State's arguments strongly emphasized the presence of exigency. The district court's written ruling denying the suppression of evidence agreed with the State that there were exigent circumstances and ruled that the officer's experience and observations, especially considering Defendant's furtive attempt to hide the pills, gave rise to probable cause.

## II.    DISCUSSION

### The Parties' Arguments

**{7}** On appeal, Defendant argues that the officer's investigation into the pills was not founded on reasonable suspicion of criminal activity and the officer's warrantless seizure of the pills was not based on probable cause and exigency. The State argues that Defendant did not preserve a challenge to the officer's reasonable suspicion to inquire about the pills. The State contends that the district court properly concluded that the seizure of the pills was supported by probable cause and exigent circumstances and argues that Defendant's focus on the plain view doctrine on appeal renders the district court's ruling on probable cause uncontested on appeal. The State also takes issue with Defendant's reference, without citation to the record, to statistical information regarding the percentage of Americans taking prescription drugs.

**{8}** Initially, we clarify which matters are properly before this Court. Defendant contends that although the officer's lack of reasonable suspicion was not argued below, the inquiry is relevant and necessary to determining the reasonableness of Officer McCarty's actions because, without a reasonable suspicion that the pills were evidence of a crime, there can be no probable cause. "It is an enduring principle of constitutional jurisprudence that courts will

3

avoid deciding constitutional questions unless required to do so." *Schieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M. 507, 775 P.2d 709. The arguments before the district court were narrowly and repeatedly circumscribed to the warrantless seizure of the pills. Both the testimony elicited from the officer and the district court's ruling reflect this narrow issue. Consistent with our policy of judicial restraint and our rule requiring preservation, we decide this case on the preserved and narrowest possible grounds. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *Allen v. Lemaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 (citing *Baca v. N.M. Dep't of Pub. Safety*, 2002-NMSC-017, ¶ 12, 132 N.M. 282, 47 P.3d 44 for the proposition that "courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues"). Thus, we do not decide whether the officer had reasonable suspicion to inquire about the pills before seizing them.

**{9}** We are not persuaded, however, by the State's attempt to characterize the district court's ruling as a rejection of the applicability of the plain view doctrine. The district court expressly found that the officer observed the bag in plain view. Nor are we persuaded by the State's attempt to distinguish the plain view analysis from the probable cause inquiry in arguing that Defendant abandoned a probable cause challenge. Below, we explain the relationship between the plain view doctrine and probable cause.

**{10}** Lastly, we note that we do not consider matters that are not of record, including the statistical information provided by Defendant on appeal. *State v. Maez*, 2009-NMCA-108, ¶ 8, 147 N.M. 91, 217 P.3d 104 ("This Court will not consider and counsel should not refer to matters not of record in their briefs"). We acknowledge, however, that many people are prescribed medication. *See State v. Erikson K.*, 2002-NMCA-058, ¶ 24, 132 N.M. 258, 46 P.3d 1258 ("A court may take judicial notice of adjudicative facts that are not subject to reasonable dispute. Such facts must be matters of common and general knowledge which are well established and authoritatively settled.") (alteration, internal quotation marks, and citation omitted)).

**Standard of Review**

**{11}** "The district court's denial of Defendant's motion to suppress evidence presents a mixed question of fact and law." *State v. Alamanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "[W]e review any factual questions under a substantial evidence standard and . . . review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of a search or seizure." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885; *see also State v. Williamson*, 2009-NMSC-039, ¶ 28, 146 N.M. 488, 212 P.3d 376 (clarifying that in the context of warrantless searches and seizures, we review the lower court's determination de novo).

**Plain View and Probable Cause**

**{12}** "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 114 N.M. 582, 158 P.3d 1025. "In order to prove that a warrantless seizure is reasonable, the State must prove that it fits into an exception to the warrant requirement." *Id.* "Among the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit." *State v. Leticia T.*, 2014-NMSC-020, ¶ 11, 329 P.3d 636. The relevant justifications for the warrantless seizure of the bag from Defendant's vehicle are the plain view observation and the existence of probable cause with exigent circumstances. *See id.* ¶ 12 ("A warrantless entry into a vehicle under the exigent circumstances exception requires probable cause plus exigent circumstances.").

**{13}** "Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. The requirement that the incriminating nature of the evidence be "immediately apparent" does not require a more heightened level of certainty that an item is contraband or evidence of a crime than is required by probable cause. *See State v. Williams*, 1994-NMSC-050, ¶ 15, 117 N.M. 551, 874 P.2d 12, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The "immediately apparent" language "essentially requires that there be probable cause," without the need for further search or an additional invasion of privacy and possessory interests. *See Williams*, 1994-NMSC-050, ¶ 15.

**{14}** "Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense." *Ochoa*, 2004-NMSC-023, ¶ 9. "There are no bright line, hard-and-fast rules for determining probable cause, but the degree of proof necessary to establish probable cause is more than a suspicion or possibility but less than a certainty of proof." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216 (internal quotation marks and citation omitted). Thus, the existence of probable cause is reviewed within the "realm of probabilities rather than in the realm of certainty." *State v. Knight*, 2000-NMCA-016, ¶ 20, 128 N.M. 591, 995 P.2d 1033. "[P]robable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer." *Ochoa*, 2004-NMSC-023, ¶ 9 (internal quotation marks and citation omitted). An officer must acquire information establishing probable cause to believe that an item is possessed unlawfully before seizing it. *See State v. Moran*, 2008-NMCA-160, ¶¶ 12-14, 145 N.M. 297, 197 P.3d 1079 (holding that although law enforcement officers may have eventually acquired sufficient information for probable cause, they did not have adequate grounds to believe that the evidence at issue was possessed unlawfully to justify the initial entry).

**Pills Not Inherently Unlawful**

**{15}** In the instant case, we conclude that the existence of two pills contained within a small bag on the floorboard of the car was insufficient to convey evidence of criminality that would be apparent to the officer based upon mere observation. As we have acknowledged, the possession of prescription pills is commonly lawful, and our laws do not prohibit the possession of prescription pills in an aftermarket container. *Cf. Gay v. State*, 138 So.3d 1106, 1110 (Fla. Dist. Ct. App. 2014) (stating that "the mere observation of pills in an aftermarket container is equally consistent with noncriminal activity as with criminal activity"). Rather, our laws declare it unlawful to possess dangerous drugs or controlled substances unless they are obtained pursuant to a valid prescription. NMSA 1978, §§ 26-1-16(E) (2013); 30-31-23(A) (2011). Officer McCarty believed, based on his training and experience as a paramedic, that the two pills were prescription medication, but he could not identify the pills and had no information indicating whether they were prescribed to Defendant. Additionally, the two pills the officer observed did not constitute an amount that might suggest that they were possessed for an illegal purpose. *Cf. People v. Humphrey*, 836 N.E.2d 210, 213-15 (Ill. App. Ct. 2005) (holding that even where the officer observed a small, clear plastic container holding several hundred white pills partially hidden under the passenger seat, the incriminating nature of the pills was not immediately apparent to the officer in a manner that satisfied the plain view doctrine to warrant the seizure of the container); *see People v. Carbone*, 184 A.D.2d 648, 650 (N.Y. App. Div. 1992) (stating that "the three pink and white pills could not have been seized under the plain view doctrine since it was not 'immediately apparent' to [law enforcement] that the pills were either evidence of criminality or contraband").

**{16}** Where, as here, an officer observes an item in plain view that is often lawfully possessed and used, the context in which the item is viewed may make it reasonably apparent to the officer that the item is being possessed or used unlawfully with a sufficient level of probability to satisfy probable cause. *See Ochoa*, 2004-NMSC-023, ¶ 13. The circumstances of the police encounter, relevant officer training and experience, and specific facts known about the suspect and the particular item observed are factors that may properly inform an officer's determination that there is probable cause to believe that the item in plain view is evidence of a crime. *See id.*

**{17}** Officer McCarty in the current case articulated no suspicious circumstances surrounding the encounter. The officer stopped Defendant for driving with expired registration. There is no indication from the officer's testimony that Defendant's driving or demeanor suggested that he might have been under the influence of a drug, nor did the officer testify that Defendant or his passenger displayed any suspiciously nervous or aggressive behavior before the officer observed the pills. The officer's testimony did not indicate that he stopped Defendant in an area known for drug trafficking or other criminal activity, and the officer gave no indication that he had any prior knowledge of Defendant. In fact, the officer did not expressly state in his testimony that his observation of the two pills in the bag was suspicious, nor did he state why it might give rise to any suspicions. The officer's testimony clarifies only that his training and experience led him to believe that the two pills he observed were similar and were prescription medication. We note that these

items have common, noncriminal uses. *State v. Haidle*, 2012-NMSC-033, ¶ 30, 285 P.3d 668 ("Mere suspicion about ordinary, non-criminal activities, regardless of an officer's qualifications and experience, does not satisfy probable cause.")(internal quotation marks and citation omitted)). The officer indicated that he grabbed the bag of pills because Defendant was trying to hide it.

**Furtive Movements and the Need for Other Specific Circumstances for Probable Cause**

{18}    As the officer's testimony demonstrates, the only suspicious circumstance that combined with the officer's view of the two pills on the floorboard was Defendant's reaction to the officer's question about what pills were in the bag—Defendant's attempt to slide the bag under the driver's seat with his foot, and his verbal response, "What bag?" Professor LaFave has offered his view on the role of furtive gestures in the probable cause determination:

> Observation of what reasonably appear to be furtive gestures is a factor that may properly be taken into account in determining whether probable cause exists.
>
> . . . .
>
> Thus, if the police see a person in possession of a highly suspicious object or *some object that is not identifiable but which because of other circumstances is reasonably suspected to be contraband*, *and then* observe that person make an apparent attempt to conceal the object from police view, probable cause is then present.

2 W. LaFave, *Search and Seizure: A Treatise of the Fourth Amendment* § 3.6(d), at 438 (5th ed. 2014); *see also Sibron v. New York*, 392 U.S. 40, 66-67 (1968) (stating that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest"). LaFave's compilation of numerous cases that form the basis of his assessment of furtive gestures in the context of probable cause demonstrates that where the criminal nature of an object is not identifiable, other circumstances that indicate criminality have been required, in addition to a suspect's attempt to conceal the object from police, in order for probable cause to exist. *See* 2 W. LaFave, *supra*, § 3.6(d) at 438-39 nn.182-83. Our review of relevant caselaw generally supports this observation. *See, e.g.*, *United States v. McGehee*, 672 F.3d 860, 863-64, 869-70 (10th Cir. 2012) (holding that where an officer observed a vehicle improperly parked in front of a house known for drug trafficking, smelled PCP in the vehicle, noticed a vanilla-extract bottle—commonly used to store PCP—in the driver-side door, and where the driver attempted to conceal a handgun underneath the seat with his foot, police had probable cause to believe the driver was involved in a narcotics-related offense); *Ex parte Kelley*, 870 So.2d 711, 715-18, 723-25 (Ala. 2003) (holding that

the police had probable cause to seize a matchbox from the defendant when she made several furtive movements in attempts to conceal the matchbox from view when plainclothes, narcotics-investigation officers approached her, having reasonably suspected that the object was part of a drug deal they witnessed while investigating "numerous complaints" about drug activity, and when the officers had previous experience with drug transactions in that location).

{19}    We recognize, however, that the contexts in which defendants make furtive movements vary widely, and courts view those contexts and the furtive movements themselves differently, as we illustrate below. At least two courts have concluded that there was probable cause with little more, if any, suspicious circumstances than those before us now. One such case is *Mavin v. Commonwealth*, 521 S.E.2d 784 (Va. Ct. App. 1999). There, a vehicle's passenger was slumped down in the backseat, attempting to hide his person and a prescription bottle without a label from law enforcement. *Id.* at 786. The passenger denied knowledge of the bottle, which the officer knew was often used to carry crack cocaine. *Id.* Additionally, the driver of the vehicle was very nervous and immediately exited the vehicle upon being stopped. *Id.* The Virginia court held, without much analysis or any citation to analogous authority, that the officer had probable cause to believe a crime was being committed sufficient to warrant seizure of the bottle. *Id.*; *but see Royal v. Commonwealth*, 558 S.E.2d 549, 550, 553-55 (Va. Ct. App. 2002) (requiring further suspicious circumstances beyond the defendant's "unusual behavior" – chewing and attempting to swallow a dollar bill and refusing to spit it out – to support probable cause where the defendant was in a vehicle reported to be suspicious and where the officer knew from experience that drugs are often concealed in dollar bills and that individuals often attempt to swallow drugs).

{20}    The second case determining the existence of probable cause with relatively minor suspicious circumstances, *Ball v. United States*, 803 A.2d 971, 973 (D.C. 2002), involved an officer's plain feel of a large medicine bottle during a patdown frisk for weapons resulting from a traffic stop. The officer testified that the traffic stop was becoming increasingly intense and the defendant, who was a passenger in the vehicle, was sweating, getting excited and repeatedly attempting to conceal and access something around his abdomen area despite the officer's orders to stop. *Id.* Additionally noting the officer's experience and familiarity with drugs being stored in similar packaging, the court determined that based on the circumstances, the officer had probable cause from his plain feel patdown. *Id.* at 981-982. The court detailed numerous cases that take different approaches to the immediately apparent/probable cause determination under analogous circumstances, adding to our observation that these cases turn on the smallest of facts, including a suspect's behavior, the officer's testimony regarding particularized knowledge of the items at issue, criminality, and the individuals involved in the encounter. *See id.* at 976-79, 976-77 nn.4-5.

{21}    Ultimately, we are persuaded by statements made by the Massachusetts Supreme Court in *Commonwealth v. Alvarado*, explaining that circumstances similar to those before us fall short of probable cause and may, at most, give rise to reasonable suspicion:

8

The view of an object which may be used for lawful as well as unlawful purposes, even a container of the type commonly used to store controlled substances, is not sufficient to provide the viewing officer with probable cause to seize that object or arrest the individual possessing that object. Nor does the observation of a furtive gesture, such as attempting to conceal an object, give rise, in and of itself, to probable cause. We are of the opinion that the combination of these two factors is more akin to a situation giving rise to a reasonable suspicion based on articulable facts justifying a threshold inquiry than to probable cause.

651 N.E.2d 824, 830 (Mass. 1995) (internal citations omitted). There, an officer stopped a vehicle based upon "the peculiar maneuverings of the automobile and the extremely slow speed at which it was traveling." *Id*. at 828. Upon stopping the vehicle, the officer shone his flashlight inside the car and observed the defendant, who was the passenger, grasping what the officer believed to be a glassine bag in his fist and placing it down the front of his pants. *Id.* The officer testified that in his training and experience, he was aware that glassine bags are commonly used to store controlled substances. *Id.* The defendant denied having put anything in his pants and gave the officer false information about where he was from. *Id*. However, the defendant later admitted that he was from a city in Colombia, which the officer knew to be a major source for cocaine in the United States. *Id.* The Massachusetts Supreme Court held that the officer did not have probable cause to arrest the defendant at that time, comparing the facts to those of other cases that included a number or combination of additional circumstances and emphasizing the need for a case-by-case determination. *Id.* at 829-831.

**{22}** Consistent with the sentiment expressed by the Massachusetts Supreme Court and the observation from Professor LaFave, we are of the opinion that Defendant's attempt to conceal the bag on the floorboard containing pills that may or may not have been lawfully possessed, without any testimony from the officer indicating suspicious circumstances or specific knowledge about Defendant or the item seized, is not an act that supplied Officer McCarty with a suspicion that rose to the level of probable cause.

**{23}** We note that our decision is also informed by cases that examine the nature or purpose of the suspect's furtive movement and consider the item the suspect attempted to conceal in making a probable cause determination. In *Ex parte Tucker*, 667 So.2d 1339, 1342 (Ala. 1995), the circumstances at issue revolved around an officer asking the defendant to remove a large bulging item from his pocket, which the defendant revealed to be a closed, opaque film canister. After the officer asked the defendant about the contents of the canister, the defendant placed it behind his back, at which point the officer requested to see the canister. *Id*. at 1342-43. The defendant obliged, and the officer discovered drugs within the canister. *Id*. at 1343. The Alabama court analyzed the mens rea behind the defendant's action, drawing a distinction between a suspect who attempted to flee or conceal an object from police view and a suspect whose action manifested an expectation in the right to privacy in the object. *Id.* at 1347-48. With even considerably more suspicious circumstances

9

surrounding the police encounter than were present in our case, the Alabama court concluded that because law enforcement was aware of the presence of the object and the defendant did not try to truly conceal or remove the evidence, his action was not so definitive as to suggest that the canister contained contraband, and it was more in the nature of an assertion of privacy in the personal effect. *Id.*; *see also Grantham v. City of Tuscaloosa*, 111 So.3d 174, 180-81 (Ala. Crim. App. 2012) (holding that based on the lack of the articulable suspicion in the circumstances of the traffic stop, the defendant/passenger's reach over the console and refusal to exit the vehicle was merely an assertion of the right to privacy by withholding consent rather than furtive movements that might rise to the level of probable cause); *State v. Lavender*, 762 P.2d 1027, 1028-29 (Or. Ct. App. 1988) (holding that where the defendant—who had a known history of drug offenses, appeared to be under the influence of drugs and was screaming in a public park, claiming to be upset by the death of her father—attempted to conceal the contents of her purse from police, there was no probable cause to believe the purse contained contraband and the defendant acted with intent to protect her right to privacy in the purse).

**{24}** Similarly, in the current case, where Officer McCarty had already seen and identified that Defendant had a bag with pills, Defendant's act of attempting to push it under the seat and asking, "What bag?" does not necessarily demonstrate an attempt to remove, destroy or truly conceal illegal contents from the officer. Defendant was cooperative in exiting the vehicle and did not attempt to flee or further hide the bag. Also, in this context, we believe it is appropriate to revisit and consider the items observed and concealed—the prescription pills. Not only are pills not inherently criminal, but their lawful use is to treat medical conditions, which our society acknowledges in various ways to be a private matter. Thus, without other factors suggestive of illegal drug possession, Defendant's actions, at best, can be seen as equally consistent with either an assertion of the right to privacy or an intent to conceal contraband. Without more, we are not persuaded that Defendant's actions or the surrounding circumstances demonstrated with sufficient probability that Defendant possessed the pills unlawfully.

**{25}** Based on the foregoing, we conclude that the officer's seizure of the bag was a hasty reaction to Defendant's furtive movement that was not based on sufficient information to satisfy probable cause to believe Defendant was in possession of contraband.

**Exigent Circumstances**

**{26}** Finally, we briefly dismiss the State's argument, citing only *Leticia T.*, 2014-NMSC-020, ¶ 19, and the statutory provisions making it unlawful to possess "dangerous drugs" or a "controlled substance," without a prescription, Section 26-1-16(E) and Section 30-31-23(A), respectively, that the officer had probable cause to believe that the bag of pills was evidence of a crime. In *Leticia T.*, the Court focused on the presence of exigent circumstances in support of a full search of a vehicle when law enforcement had "reports of an armed subject pointing a 'long gun' at several people from the window" of the vehicle, but where law enforcement was initially unable to locate the weapon. 2014-NMSC-020, ¶¶

10

3-4, 18-23. "A warrantless entry into a vehicle under the exigent circumstances exception requires probable cause *plus* exigent circumstances." *Id*. ¶ 12 (Emphasis added.) Because we have already determined that the officer lacked probable cause for the seizure of the bag, we need not analyze the presence of exigency or its role in the analysis of the plain view exception.

## III.   CONCLUSION

**{27}**   The district court's denial of Defendant's motion to suppress is reversed. We remand for further proceedings consistent with this disposition.

**{28}   IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**RODERICK T. KENNEDY, Judge**