This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                            **NO. A-1-CA-35465**

**PHILLIP CLIFFORD**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Judge.**

{1}     After the district court denied his motion to suppress following an evidentiary hearing, Defendant Phillip Clifford entered a conditional plea of guilty to possession

of methamphetamine (meth) and possession of drug paraphernalia. Defendant now appeals the denial of his suppression motion. We affirm.

**BACKGROUND**

{2}    The following facts were adduced at the suppression hearing and are viewed in the light most favorable to the prevailing party. *See State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95 (stating that, on appeal of an order on a motion to suppress, "[w]e review the contested facts in a manner most favorable to the prevailing party"). An Albuquerque Police Department officer was on uniformed patrol in a marked police car investigating potential auto burglaries when he pulled into a vacant lot behind a hotel. The officer saw a pickup truck with cardboard covering some of its windows parked in the otherwise empty lot, so he pulled up behind it. He did not activate his police lights or siren, but "sat there for a while and . . . ran the plate." The officer could not see from his police car if anyone was inside of the truck, so he eventually got out of his car and walked to the truck's passenger side "to make sure it wasn't abandoned . . . or stolen" and "to see if anybody damaged the steering column." As the officer approached, he saw Defendant inside the truck with "a [three-inch, glass] pipe in his hand and a lighter up towards it." When Defendant saw the officer, he clenched the pipe in his hand. The officer greeted Defendant and asked, "What do you got in your hand?" He told Defendant to "open [his] hand up" and to hand him the pipe. Defendant complied, and the officer arrested

Defendant. After placing Defendant in handcuffs, the officer commented to Defendant, "I sat behind you for, like, ten minutes; you didn't see me, obviously."

{3} At the suppression hearing, defense counsel asked the officer whether he knew what was in the pipe before he seized it and whether it could have been tobacco. The officer replied that "[i]t could have been [tobacco], but . . . from my training and experience on the streets and in narcotics, usually glass pipes are for narcotics." The officer testified that after Defendant handed him the pipe, he observed "a rock in the pipe" that "was not scorched yet."

{4} At the end of the hearing, the district court orally found that "[t]he truck was in an unusual place, and [the officer] couldn't see into the vehicle." It found that "simply driving up and parking behind the vehicle was not any kind of a seizure." And the court further concluded that the officer's conduct in walking up to the truck and saying, "Hey[,] how's it going" to Defendant was not a seizure, but rather "a common greeting during a consensual encounter." The district court determined that the point at which a seizure occurred was "[w]hen the officer saw the pipe and the lighter" and "immediately said . . . show me what's in your hand. Give it to me." Thus, it said, the officer's seizure of Defendant and the pipe at that point was reasonable because it was not based on "a mere hunch," but was, "based on his training and experience, believed to be a pipe used for ingesting drugs[.]" The district court denied the suppression motion. There were no written findings of fact or conclusions of law in the order

3

denying the motion.

**DISCUSSION**

{5} On appeal, Defendant first contends that the officer's seizure of Defendant and the pipe violated the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. Specifically, Defendant argues that (1) the officer's conduct in parking behind Defendant's truck and then approaching the truck's window was an unreasonable seizure of Defendant; (2) the officer's conduct in greeting Defendant, asking Defendant what was in his hand, and ordering Defendant to hand over the pipe was an unreasonable seizure; (3) the plain view exception to the warrant requirement does not apply to justify seizure of the pipe because (a) the officer was not lawfully located in the area where the item was seized, and (b) a pipe, in itself, is not sufficiently incriminating to give rise to probable cause; and (4) there were no exigent circumstances to justify the officer's seizure of the pipe without first obtaining a warrant. Defendant's second contention on appeal is that conviction for both possession of drugs and possession of paraphernalia violated his constitutional right to be free from double jeopardy. As we explain below, we conclude that Defendant's constitutional rights were not violated, and there was no double jeopardy violation.

**I.      SEIZURE CLAIMS**

**A.      Standard of Review**

4

{6} "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We defer to the district court's findings of fact that are supported by substantial evidence. *Id.* When, as in this case, we have few or no findings of fact from the district court, we indulge in all reasonable inferences and presumptions in support of the district court's ruling. *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922. And, where a district court does not reject uncontradicted evidence in the record, appellate courts "presume the court believed all uncontradicted evidence." *Jason L.*, 2000-NMSC-018, ¶ 11. To determine whether a seizure was justified, "we review the totality of the circumstances as a matter of law." *Funderburg*, 2008-NMSC-026, ¶ 10 (internal quotation marks and citation omitted).

**B.      Defendant Was Not Seized Until the Officer Told Defendant to Open His Hand**

{7}      The Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution prohibit "unreasonable" seizures without a warrant. In determining whether a defendant was unreasonably seized, "our first inquiry is at what moment [the d]efendant was seized[.]" *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. "The point at which the seizure occurs

5

is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *Id.* "[A] seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away." *Id.* ¶ 11 (internal quotation marks and citation omitted). "The restraint on the person's freedom of movement may be effected either by physical force or a show of authority." *State v. Lopez*, 1989-NMCA-030, ¶ 3, 109 N.M. 169, 783 P.2d 479 (citation omitted). In evaluating whether a defendant was seized by police, we consider "all of the circumstances surrounding the incident" to assess whether a reasonable person in the defendant's position "would have believed that he was not free to leave." *Id.* (internal quotation marks and citation omitted).

{8}     We first note that part of Defendant's argument on appeal is that, as a homeless citizen, he has a greater expectation of privacy in his automobile than other citizens because "the car was effectively his home[.]" Although Defendant noted in the suppression proceedings that he was homeless and living in his truck at the time of the incident, he did not argue that this fact entitled him to a greater expectation of privacy, and neither the State nor the district court had the opportunity to consider that issue. Therefore, to the extent that Defendant's appeal relies on the notion that, as a homeless man, he had a greater expectation of privacy in his vehicle than our courts have previously afforded other citizens, we do not reach this issue because he did not preserve it. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must

appear that a ruling or decision by the trial court was fairly invoked."). And, he does not assert on appeal that any exceptions to the preservation requirement apply in this case. *See* Rule 12-321(B) (listing exceptions to the preservation requirement). Therefore, we proceed under the principle clarified by our Supreme Court in *State v. Bomboy* that a person's privacy interest in an automobile is not equivalent to the heightened privacy interest in a home. 2008-NMSC-029, ¶ 12, 144 N.M. 151, 184 P.3d 1045.

{9}     Defendant argues that he was seized when the officer pulled up behind his truck, parked there for ten minutes, and then approached his truck on foot, because "[a] reasonable person parked in an isolated area with a police cruiser parked behind them for ten minutes who was then approached by the officer would not feel free to simply drive away." Under the circumstances of this case, we disagree. The evidence at the hearing overwhelmingly showed that Defendant was not aware of the officer's presence until the officer appeared alongside his passenger window and began speaking to him. It would be unreasonable to infer that Defendant would knowingly choose to light his meth pipe at the moment a police officer was approaching his truck window. *See Jason L.*, 2000-NMSC-018, ¶¶ 10-11 (stating that appellate courts indulge in all *reasonable* inferences and presumptions in support of the district court's ruling and presume the court believed all uncontradicted evidence). Indeed, the officer's lapel video showed that, after arresting Defendant, the officer commented to

Defendant, "I sat behind you for, like, ten minutes; you didn't see me, obviously." Therefore, a reasonable person who is not aware of police presence would not feel restrained in his freedom to leave that presence. *See Harbison*, 2007-NMSC-016, ¶ 11 (considering "all of the circumstances surrounding the incident" to assess whether a reasonable person in the defendant's position "would have believed that he or she was not free to leave" (alteration, internal quotation marks, and citation omitted)).

{10} Defendant next argues that he was seized at the moment the officer "made contact and immediately demanded that [Defendant] tell [the officer] what was in his hand, open his hand, and give [the officer] what he was holding." Contrary to Defendant's argument, Defendant was seized at the point that the officer told Defendant to hand over the pipe because this demand was a show of authority. *See Lopez*, 1989-NMCA-030, ¶ 3. Further, this seizure was reasonable under both the Federal and State Constitutions because the officer had already witnessed Defendant engaging in what appeared to be criminal conduct before he seized Defendant.

**C.  The Plain View Doctrine Applies to Justify the Officer's Seizure of the Pipe**

{11} Under Article II, Section 10 of our State Constitution, an officer may not search an automobile without a warrant "[a]bsent exigent circumstances or some other exception to the warrant requirement[.]" *Bomboy*, 2008-NMSC-029, ¶ 17. However, if an officer is lawfully present outside of an automobile, "an item in [that] automobile is in plain view[,] and the officer has probable cause to believe the item is evidence

8

of a crime, the officer may seize the item." *Id.*; *see also State v. Lopez*, 2009-NMCA-127, ¶ 12, 147 N.M. 364, 223 P.3d 361 ("Because the pipe was clearly contraband, it could properly be seized pursuant to the plain view doctrine, and no warrant was required."). In other words, under the plain view doctrine, "items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent[.]" *State v. Sanchez*, 2015-NMCA-084, ¶ 13, 355 P.3d 795 (internal quotation marks and citation omitted). The "incriminating nature" of an item is "immediately apparent" when there is probable cause to associate the item with criminal activity. *Id.* (internal quotation marks and citation omitted); *see also State v. Ochoa*, 2004-NMSC-023, ¶ 13, 135 N.M. 781, 93 P.3d 1286 ("Objects commonly associated with particular criminal activities can reasonably give rise to inferences that are distinct from objects ordinarily used for benign, non-criminal purposes."). Probable cause exists when the facts and circumstances "warrant a belief" that a crime was or is being committed. *Sanchez*, 2015-NMCA-084, ¶ 14 (internal quotation marks and citation omitted). And we review the existence of probable cause "within the realm of probabilities rather than in the realm of certainty." *Id.* (internal quotation marks and citation omitted); *see id.* ("[T]he degree of proof necessary to establish probable cause is more than a suspicion or possibility, but less than a certainty[.]" (internal quotation marks and citation omitted)).

{12} In circumstances where the object at issue could conceivably have a lawful purpose, an officer's relevant training and experience may support his or her reasonable belief that the object was probably being used unlawfully. *See Ochoa*, 2004-NMSC-023, ¶ 13 ("An officer's experience and training, considered within the context of the incident, may permit the officer to identify drug paraphernalia . . . with a reasonable level of probability, sufficient for probable cause."); *Sanchez*, 2015-NMCA-084, ¶ 16 (listing "relevant officer training and experience" as one of several "factors that may properly inform an officer's determination that there is probable cause to believe that the item in plain view is evidence of a crime"). *Compare Ochoa*, 2004-NMSC-023, ¶¶ 3, 10, 13 (holding that the incriminating nature of a glass vial in plain view was immediately apparent to the officer based on his training and experience because it was an object commonly associated with criminal activity, even though the contents of the vial were not visible), *Lopez*, 2009-NMCA-127, ¶¶ 3, 12 (noting that the officers' experience and training permitted them to identify a glass pipe with white powdery residue as associated with the smoking of narcotics), *and State v. Miles*, 1989-NMCA-028, ¶¶ 2-5, 12, 108 N.M. 556, 775 P.2d 758 (holding that seizure of a small wooden box in plain view inside a car was proper where the officer readily recognized from his training and experience that such boxes are designed and commonly used to hold marijuana and a small pipe), *with Sanchez*, 2015-NMCA-084, ¶¶ 15, 17 (holding that plain view seizure of clear bag containing

10

prescription pills was improper because "possession of prescription pills is commonly lawful," the officer's training and experience did not demonstrate anything more than his ability to identify the pills as those that require a prescription, and the officer did not articulate any other facts that indicated the pills were possessed or being used unlawfully).

{13} Defendant first argues that the officer was not "lawfully located in the area where the [pipe] was seized" because the officer "was illegally detaining [Defendant] without reasonable suspicion to do so." As we concluded above, however, the officer's detention of Defendant did not occur until he told Defendant to hand over the pipe. Therefore, the officer was lawfully present standing outside of Defendant's truck in a vacant lot open to the public when he first observed the glass pipe and lighter in Defendant's hand.

{14} Next, Defendant's reliance on *Sanchez* to support his contention that the incriminating nature of Defendant's pipe was not immediately apparent because a glass pipe can also be used to smoke lawful substances such as tobacco is unavailing. In *Sanchez*, the officer's training and experience did not support a reasonable belief that the prescription pills in that case were being used unlawfully because the officer did not testify that, in his training and experience, prescription pills in clear plastic bags were usually contraband. Instead, the officer testified only that his prior training and experience as a paramedic allowed him to identify the pills as those that require

11

a prescription. *Sanchez*, 2015-NMCA-084, ¶ 15. This Court concluded that, because possession of prescription medications is often lawful, the officer needed more information before he could form reasonable belief that the defendant was using them unlawfully. *See id.* ¶¶ 14-15. In contrast, here, the officer's belief that Defendant's glass pipe was being used criminally was reasonable because it was supported by his relevant "training and experience on the streets and in narcotics" that "usually glass pipes are for narcotics." Defendant's attempt to conceal the pipe inside his hand when he saw the officer further supports the officer's reasonable belief that the pipe was being used criminally. *See id.* ¶¶ 18, 21 (acknowledging that an attempt to conceal an object may be a factor in determining whether probable cause exists, but it cannot be the only factor). In sum, where the officer testified that in his training and experience glass pipes are associated with narcotic use, and where Defendant tried to conceal the pipe inside of his hand when he saw the officer, the officer had probable cause to immediately seize the glass pipe when he saw it in plain view. *See Bomboy*, 2008-NMSC-029, ¶ 17; *Lopez*, 2009-NMCA-127, ¶ 12.

{15}    Finally, Defendant argues that the officer's immediate, plain view seizure of the pipe was improper because there were no exigent circumstances. We disagree. In *Bomboy*, our Supreme Court held that a particularized showing of exigent circumstances was not always required before an officer could seize contraband in plain view without a warrant. *Bomboy*, 2008-NMSC-029, ¶ 17. Instead, the Court

12

recognized that the reason an officer may immediately seize contraband in plain view from inside an automobile is because "the contraband is in plain view not only to the officer, but also to the public at large, and therefore, if it is left alone, it can easily be tampered with or destroyed." *Id.* ¶ 2. Thus, immediate seizure under those circumstances is "consistent with the exigent circumstances exception to the warrant requirement." *Id.* ¶ 13. Here, similar to *Bomboy*, Defendant's truck was in a place that was open to the public "with evidence of a crime in plain view, not only to the officer but to the public as a whole." *Id.* "Such evidence, if left alone, could easily be tampered with or destroyed." *Id.* Accordingly, the officer's immediate seizure of the pipe in this case was consistent with the exigent circumstances exception to the warrant requirement.

## II.    DOUBLE JEOPARDY

{16}    Defendant asserts that conviction for both possession of drugs and possession of drug paraphernalia violated his right to be free from double jeopardy. The Federal and State Constitution prohibit any person from being twice put in jeopardy for the same offense. *State v. Almeida*, 2008-NMCA-068, ¶ 5, 144 N.M. 235, 185 P.3d 1085. NMSA 1978, Section 30-1-10 (1963) also provides that "[n]o person shall be twice put in jeopardy for the same crime." Double jeopardy claims may be raised for the first time on appeal. *See id.* ("[T]he defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before

13

or after judgment."); *State v. Sanchez*, 1996-NMCA-089, ¶ 12, 122 N.M. 280, 923 P.2d 1165 (stating that Section 30-1-10 allows a defendant to raise a double jeopardy claim for the first time on appeal). "We review double jeopardy claims de novo." *Almeida*, 2008-NMCA-068, ¶ 4.

{17}     One of the purposes behind the prohibition against double jeopardy is "to protect against multiple punishments for the same offense." *Id.* ¶ 5. Multiple punishment problems can arise from "double-description" claims, "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant's double jeopardy claim is a double-description claim because he was charged under two different statutes for what he contends is a single act: possession of methamphetamine inside of a glass pipe.

{18}     Double jeopardy prohibits multiple punishments in the double-description context only where the conduct is "unitary" and where the Legislature did not intend to create separately punishable offenses. *Almeida*, 2008-NMCA-068, ¶ 6. Conduct is unitary when "the same conduct violates both statutes." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. The State concedes, and we agree, that Defendant's conduct—holding a glass pipe containing an un-scorched rock of meth—can be reasonably characterized as unitary. Thus, we are left to decide whether the Legislature intended to create separately punishable offenses for this conduct. *See*

14

*id.* ¶ 28 ("If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry."); *Almeida*, 2008-NMCA-068, ¶ 6 (same).

**{19}** In construing legislative intent, we first look to the plain language of the statutes at issue to determine whether they "expressly" provide for "multiple punishments for unitary conduct." *Swafford*, 1991-NMSC-043, ¶ 30. Because the statutes at issue here do not expressly state that conviction for one offense shall not preclude conviction for the other, *compare* NMSA 1978, § 30-31-23(A), (E) (2011) (prohibiting meth possession), *with* NMSA 1978, § 30-31-25.1(A) (2001) (prohibiting drug paraphernalia possession), we proceed to apply the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Swafford*, 1991-NMSC-043, ¶ 30. The *Blockburger* test seeks to determine whether there are "two offenses or only one" in prosecutions "where the same act . . . constitutes a violation of two distinct statutory provisions." *State v. Gutierrez*, 2011-NMSC-024, ¶ 56, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). In making this determination, the test that we apply is "whether each [statute] requires proof of a fact which the other does not." *Id.* (internal quotation marks and citation omitted). If all of the elements of one statute are contained within the other statute, then "one statute is subsumed within the other," and our inquiry ends with the conclusion that the Legislature did not intend to punish the same conduct under two different statutes. *Id.* But, if each statute does contain an element of proof that is not found in the other, we presume "that the

15

[L]egislature intended to punish the offenses separately." *Almeida*, 2008-NMCA-068, ¶ 9.

{20} Here, Defendant was convicted of violating two separate statutes: Section 30-31-23(A), (E) (possession of meth) and Section 30-31-25.1(A) (possession of paraphernalia. The meth possession statute requires, in relevant part, proof that Defendant possessed methamphetamine. *See* § 30-31-23(A), (E). The paraphernalia possession statute requires, in relevant part, proof that Defendant "use[d] or possess[ed] with intent to use drug paraphernalia to . . . inhale or otherwise introduce into the human body a controlled substance[,]" in this case, meth. Section 30-31-25.1(A). The definition of "drug paraphernalia" includes "glass . . . pipes[.]" NMSA 1978, § 30-31-2(V)(12)(a) (2009, amended 2017). Each of these two statutes contains an element of proof not contained by the other: the meth possession statute requires proof of possession of the drug itself, regardless of whether the accused possessed any means to introduce it into his body, while the paraphernalia possession statute, under the facts of this case, requires proof that Defendant used or possessed the means to introduce an illegal drug into his body, regardless of whether he possessed the drug along with it. Therefore, we presume that the Legislature intended to punish these two offenses separately. *See Almeida*, 2008-NMCA-068, ¶ 9.

{21} Once we have established the presumption that the Legislature intended to punish the two offenses separately, we determine whether "other indicia of legislative

16

intent" overcome this presumption. *Swafford*, 1991-NMSC-043, ¶ 31 (stating that the presumption "is not conclusive and it may be overcome by other indicia of legislative intent"). This means that "we must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes." *Id.*; *see id.* (providing "several guiding, but by no means exclusive, principles for divining legislative intent"). *Swafford* and subsequent double jeopardy cases addressed by this Court have focused on two guiding principles: the societal interests involved in the statutes and the quantum of punishment used between the statutes. *See id.* ¶¶ 32-34; *Almeida*, 2008-NMCA-068, ¶¶ 14-20; *State v. Fuentes*, 1994-NMCA-158, ¶¶ 15-18, 119 N.M. 104, 888 P.2d 986.

{22} In evaluating the societal interests involved in the statutes, we "identify the particular evil sought to be addressed by each offense." *Swafford*, 1991-NMSC-043, ¶ 32. If the statutes at issue are "usually violated together" and "seem designed to protect the same societal interest," the inference is strong "that the function of the multiple statutes is only to allow alternative means of prosecution." *Id.* We must, however, narrowly construe the social evils proscribed by different statutes. *See id.* ("[C]are must be taken in describing the evils sought to be prevented—social evils can be elusive and subject to diverse interpretation. Accordingly, the social evils proscribed by different statutes must be construed narrowly[.]" (footnote omitted)). "The quantum of punishment also is probative of legislative intent to punish." *Id.* ¶ 33.

17

We may infer that the Legislature did not intend for punishment to be applied under both statutes "[w]here one statutory provision incorporates many of the elements of a base statute," yet "extracts a greater penalty than the base statute." *Id.*

{23}     Defendant asserts an overly broad construction of the social interest involved in the statutes at issue: protecting the public from the dangers of drug abuse. Under this construction, all cases involving more than one charge under New Mexico's comprehensive Controlled Substances Act would be vulnerable to double jeopardy scrutiny. *See id.* ¶ 32 n.7 (cautioning that too broad of an interpretation "eviscerates the [L]egislature's intent to proscribe the narrower, distinct evils . . . by way of different statutory [provisions]"). Because we must construe social interests narrowly, we construe the evil proscribed by possession of the drug itself differently than the evil proscribed by possession of paraphernalia. Possession of the drug itself, meth in particular, is possession of a substance our Legislature has deemed dangerous. *See* § 30-31-23(E) (making possession of meth a fourth degree felony). Meth is not only dangerous to a person in possession who may intend to smoke it, but to others who may come into contact with the drug, whether accidentally by a child, or through an intentional transfer from one person to another. The crime of meth possession does not require proof that the accused actually used or intended to use that particular drug; mere possession is enough. *See* § 30-31-23(A). Therefore, we conclude that the Legislature's ban on meth possession sought to eliminate the specific evil of having

18

the drug be present and available on the streets and in people's homes and cars.

{24} The statute that prohibits possession of a pipe, on the other hand, seeks to eliminate a different evil that involves actual use or the intent to use the illegal drug—specifically, the evil of facilitating entry of the drug into the human body. *See* § 30-31-25.1(A). However, it appears that the Legislature considered possession of a drug pipe by itself as less dangerous than possession of the actual drug, and less dangerous than possession of both the pipe and the drug, which is illustrated by the misdemeanor status the Legislature assigned to possession of a pipe alone. *See* § 30-31-25.1(C) (making possession of drug paraphernalia a misdemeanor punishable by a fine of between $50 and $100 or by up to one year in prison). And although we acknowledge Defendant's point that these two crimes are often committed together, we also recognize that they may often be committed separately. Without any data in the record to support either viewpoint, this consideration is not helpful to our analysis.

{25} As to the quantum-of-punishment factor, the difference in severity of punishment for felony meth possession compared to misdemeanor possession of a pipe makes sense because meth by itself is more dangerous than a pipe by itself. Neither crime is a "base statute" for the other, and neither is "merely an aggravated form of the other." *Fuentes*, 1994-NMCA-158, ¶ 17. The two stand alone, with independent elements that address separate, though related, evils. Consideration of these factors reinforces the presumption that the Legislature intended to punish

19

possession of the pipe separately. Our conclusion is consistent with this Court's commentary in *Almeida* that "two punishments would appear to be permitted when a baggie of drugs is found next to a pipe, or even when the drugs are found inside the pipe" because "the statutes that punish the possession of controlled substances and the possession of drug paraphernalia are intended to punish distinct wrongs." 2008-NMCA-068, ¶ 20. Defendant's conviction for both meth possession and possession of drug paraphernalia do not violate his right to be free from double jeopardy.

**CONCLUSION**

{26}    We affirm.

{27}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**HENRY M. BOHNHOFF, Judge**

_____
**DANIEL J. GALLEGOS, Judge**