James Harold HOEY *v.* STATE of Arkansas

CA CR 00-707                                   42 S.W.3d 564

Court of Appeals of Arkansas
Division IV
Opinion delivered March 14, 2001

*Goodwin, Moore, Colbert, Broadaway & Gray*, by: *Michael W. Langley*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Leslie Fisken*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. James Harold Hoey, appellant, was charged by the State with possession of a controlled substance and with possession of drug paraphernalia. In a pretrial motion to suppress evidence, he contended that these charges resulted from a search and seizure that violated his Fourth Amendment rights. The trial court denied the motion, and Hoey entered a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3, reserving a right to appeal the adverse ruling. He was sentenced to seventy-two months in the Arkansas Department of Correction for the controlled-substances conviction and to sixty months for the possession of drug paraphernalia. His sole argument on appeal is that the trial court erred in denying his motion to suppress. We agree, and therefore reverse and remand.

In reviewing the denial of a motion to suppress, we make an independent determination based on the totality of the circumstances and view the evidence in the light most favorable to the

State. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Id.* (citing *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997)); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). When police officers have conducted a search without a warrant, our review begins with the basic premise that a warrantless search is unauthorized. *Evans v. State*, 65 Ark. App. 232, 987 S.W.2d 741 (1999). All warrantless searches are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant, and the burden of proof is on those who seek to justify it. *Id.*

At the suppression hearing, Officer Jamie Martin of the Green County Sheriff's Department testified as follows regarding events that began around 2:53 a.m. on December 30, 1998. Martin stopped Hoey's vehicle after observing it cross the highway's center line three times in approximately a mile and a half. A driver's license check and criminal history revealed that Hoey had been convicted of possession of methamphetamine, but that he had no outstanding warrants. Martin asked for proof of insurance and a consent to search. Hoey became "kind of angry," said that he had nothing in the vehicle, refused to give consent to a search, and was unable to provide proof of insurance.

Martin informed appellant that it was the sheriff department's policy, pursuant to an order by the municipal judge, to impound and inventory a vehicle when no proof of insurance was available and to take the owner to his destination within the county. Officer Bradley Snyder arrived, and the two officers began an inventory of Hoey's truck to protect the department from claims of lost or stolen property. Because Hoey was going to need a ride, Martin asked "if he had anything." Hoey said that he had a pocket knife, and Martin told him it needed to be put in the patrol car. Martin asked if Hoey had "anything else on him," Hoey said that he did not, and Martin asked him to empty his pockets. Hoey took out of his coat pocket four hollowed-out wooden tubes, which Martin described as "suspicious, like what people use to ingest methamphetamine by snorting." Martin further testified:

> He was emptying his pockets. I became suspicious. He lifted up his jacket and turned around and said he did not have anything on him. I did not tell him to do that. When he turned around, in his watch pocket of his blue jeans, I had my flashlight, you could see part of a clear bag hanging out of that watch pocket. [As I earlier testified,] I realized that methamphetamine is packaged in a

clear plastic bag. I realized that he had been previously convicted of possession of a controlled substance and that he had snort tubes in his pocket. Those factors along with the plastic bag made me suspicious. At that point, my main concern was the clear bag hanging out. I just simply pulled it out of the pocket. It was a rock of crystal meth.

At that point, Martin placed Hoey under arrest. Hoey asked if Martin was finished searching his truck, and Martin said that he was not.

Martin testified that because the officers had found narcotics at that point, they waited to do an inventory after arriving at the sheriff's department. He testified that he stopped the inventory before completion for no particular reason, that he made no inventory list at the time of the stop, that he did not issue a citation for lacking proof of insurance, that he asked about weapons for his own protection, and that he did not conduct a pat down. Martin stated that Hoey was not under arrest when he handed over his knife, raised up his coat, and said that he had nothing else; nor was he under arrest at the point when Martin saw the bag. Martin acknowledged that there was nothing readily, apparently illegal about the protruding piece of plastic, and that at the time he reached for the plastic he saw no "white substance or anything," only clear plastic. He conducted no further search after pulling the methamphetamine from Hoey's pocket.

Hoey does not challenge the initial stop of his vehicle for a traffic violation. He contends that the warrantless search was unreasonable because the officer did not have probable cause to search him and because the methamphetamine in his pants pocket was not in plain view. Hoey concludes that the officer unlawfully directed Hoey to empty his pockets.

██ ██ The State contends that the warrantless search was justified because Officer Martin had probable cause to believe that Hoey had committed a felony, possession of methamphetamine. The State asserts that probable cause arose from the officer's suspicions after learning of Hoey's criminal history with methamphetamine and seeing his hollowed-out wooden tubes, commonly used as drug paraphernalia, and from other factors. The State cites *Brunson v. State*, 54 Ark. App. 248, 925 S.W.2d 434 (1996) (rev'd on other grounds), for the holding that probable cause for an arrest means a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves and existing at the time the arrest is

made that justify a cautious and prudent police officer's belief that the accused committed a felony, although this does not require the quantum of proof necessary to support a conviction. We note, however, that a search incident to arrest may not precede an arrest and serve as part of the justification for the arrest. *Brunson, id.* (citing *Sibron v. New York*, 392 U.S. 40 (1968)). Under Ark. R. Crim. P. 3.1 (2000), a law-enforcement officer lawfully present in a place may, in the performance of his duties, stop and detain anyone who he reasonably suspects has committed a felony, if such action is reasonably necessary to determine the lawfulness of the person's conduct. "Reasonable suspicion" is defined as follows:

> "Reasonable suspicion" means a suspicion based on *facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest*, but which give rise to more than a bare suspicion; that is, *a suspicion that is reasonable* as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1 (2000) (emphasis added).

■ Here, neither the emptying of Hoey's pockets nor the removal of the plastic bag was conducted pursuant to a pat-down search for officer safety, and Hoey had been neither arrested nor given a citation.[1] We hold that under the circumstances of this case, a reasonable suspicion that Hoey had committed a felony could not have arisen before Officer Martin grabbed the plastic bag from Hoey's pocket and discovered the methamphetamine. Again, an incident search may not precede an arrest and serve as justification for it. Therefore, we agree with Hoey that no reasonable cause existed for the search of his person, and that the directive that he empty his pockets was unlawful.

■ Neither do we find merit in the argument that the methamphetamine was seized from appellant's pocket as a result of the plain-view doctrine, under which officers who are legitimately at a location and acting without a search warrant may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, the fruit of a crime, or an instrumentality of a crime. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d

---

[1] We note that under our recent decision in *Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001), the operator of a vehicle who cannot produce proof of insurance should be allowed to keep the vehicle and be given at least ten days to present proof of insurance. Thus, there was no reason for the impoundment of Hoey's truck or for an inventory of its contents.

222 (1998). Officer Martin specifically testified that he saw only plastic protruding from Hoey's pocket, with no indication that it contained a white substance or anything else. Thus, nothing in plain view could have caused the officer to believe that something in the plastic was evidence of a crime, the fruit of a crime, or an instrumentality of a crime.

■ Applying the principles of "reasonable cause" and "plain view," we conclude that the trial court incorrectly denied the motion to suppress. Therefore, we reverse and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

STROUD, C.J., concurs, and VAUGHT, J., agrees.

JOHN F. STROUD, Jr., Chief Judge, concurring. I agree with the result reached in this case. However, I would reverse and remand based solely upon our recent decision in *Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001), which is cited in footnote 1 of the prevailing opinion.