2004-NMSC-023

93 P.3d 1286

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**John Eric OCHOA, Defendant–Petitioner.**

No. 28,183.

Supreme Court of New Mexico.

June 8, 2004.

John Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Petitioner.

Patricia Madrid, Attorney General, Martha Anne Kelly, Assistant Attorney General, Albuquerque, for Respondent.

## OPINION

BOSSON, Justice.

{1} Defendant appeals the denial of his motion to suppress evidence seized during a protective frisk. The question on appeal is whether the retrieval of a vial from Defendant's pocket violated his constitutional rights, when only the vial, and no drugs, were in plain view. We hold that Defendant's constitutional rights were not violated, and affirm the trial court's denial of the motion to suppress and the Court of Appeals opinion to the same effect.

## BACKGROUND

{2} Defendant was charged with possession of a controlled substance and entered a conditional plea, reserving for appeal the denial of his motion to suppress. At the suppression hearing, a police officer testified that he and another officer responded to a report of a break-in. The caller identified Defendant as the perpetrator. The caller also indicated that he had dealt with Defendant in the past and feared for his safety. When the officers arrived on the scene, they observed Defendant standing next to a van, and they saw him hand something to a person in the driver's seat. The officer testified that he was concerned because he knew that earlier in the week Defendant had been pulled over at a border patrol checkpoint and found to be carrying weapons and a small amount of marijuana. The officer then undertook a protective pat down of Defendant.

{3} The officer testified that as he was patting down Defendant's legs, he observed a glass vial in the coin pocket of Defendant's pants. The officer described Defendant's pants as quite baggy, allowing the pockets to hang open and permitting the officer to see the vial. The officer then testified that he removed the vial and asked Defendant what it was. Defendant answered, "That's my shit." The vial was clear glass and contained a white powdery substance, later determined to be methamphetamine. The officer also testified that he was familiar with vials of the type seized from Defendant, and that in his experience they are either empty or contain drugs. The Court of Appeals characterized the officer's testimony, unchallenged on cer-

tiorari, as follows: "[the officer] knew that vials such as the one sticking out of Defendant's pocket often contained drugs."

{4} The district court denied the motion to suppress the vial and its contents. The court found that the officer was legally conducting a protective frisk when he observed the vial in plain view, and that the officer's general experience identifying drugs and drug paraphernalia, and specific knowledge of Defendant's past involvement with drugs, sanctioned the seizure of the vial. The Court of Appeals affirmed in a memorandum opinion, stating that the vial was in plain view and its incriminating nature gave the officer probable cause to seize it.

## STANDARD OF REVIEW

{5} In reviewing the trial court's denial of the motion to suppress, we view the evidence in the light most favorable to the State. *State v. Arredondo,* 1997–NMCA–081, ¶ 9, 123 N.M. 628, 944 P.2d 276, *overruled on other grounds by State v. Steinzig,* 1999–NMCA–107, 127 N.M. 752, 987 P.2d 409 (overruling *Arredondo* to the extent that it indicates that the discovery of the evidence must be inadvertent). We review the trial court's application of the law to the facts de novo. The constitutionality of a search and seizure is a mixed question of law and fact which we review de novo. *Id.*

## DISCUSSION

{6} This is a case of first impression for this Court. Defendant argues that the act of extracting the vial from his pocket constituted a seizure of the vial in violation of his rights under both the Fourth Amendment to the United States Constitution, and Article II, Section 10 of the New Mexico Constitution. Defendant does not argue that the New Mexico Constitution should be interpreted differently from the United States Constitution in the context of this appeal. Thus, we assume without deciding that both constitutions afford equal protection to individuals against unreasonable seizures in this context, and we analyze the constitutionality of the seizure under one uniform standard. *State v. Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1.

{7} The parties agree that the officer was lawfully conducting a protective pat down to detect weapons, because Defendant was suspected of committing a burglary and could have been armed. *State v. Cobbs,* 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App. 1985) (recognizing right to frisk is automatic when suspect has been stopped on the suspicion of committing or preparing to commit an inherently dangerous crime, like burglary); *State v. Vandenberg,* 2003–NMSC–030, ¶ 33, 134 N.M. 566, 81 P.3d 19 (reasonable concerns for officer safety, stemming from the conduct of a suspect, justify a protective pat down of a suspect). A protective frisk is limited to a pat down of the suspect's outer clothing to detect concealed objects that could be used as weapons. *State v. Paul T.,* 1999–NMSC–037, ¶ 17, 128 N.M. 360, 993 P.2d 74.

{8} Defendant argues that in seizing the vial, an item that could not have been mistaken for a weapon, the officer exceeded the scope of a permissible protective frisk. *State v. Barragan,* 2001–NMCA–086, ¶ 15, 131 N.M. 281, 34 P.3d 1157 (officers emptied a suspect's pocket of all contents, exceeding the proper scope of a pat down and illegally seizing those items that were not considered weapons). We agree that an officer may not exceed the scope of a protective pat down, and seize items not reasonably considered potential weapons. However, an officer may seize incriminating evidence observed in plain view during the course of a protective pat down.

## PLAIN VIEW

{9} Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime. *Arredondo,* 1997–NMCA–081, ¶ 20, 123 N.M. 628, 944 P.2d 276. Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense. " 'More specifically,

probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer.' " *State v. Pena,* 108 N.M. 760, 761, 779 P.2d 538, 539 (1989) (quoting *United States v. Lopez,* 777 F.2d 543, 551 (10th Cir.1985)).

{10} As noted above, the parties agree that the officer was lawfully conducting a pat down when he observed the vial. The parties apparently agree that the vial, or a portion of it, was observed in plain view during the ordinary course of the pat down. However, the parties do not agree whether the incriminating nature of the vial was reasonably apparent to the officer when he first observed it in plain view. The contents of the vial, a white powdery substance, were not visible before the officer extracted the vial from Defendant's pocket.

{11} Defendant argues that a vial, partially in plain view but without any observable contents, cannot itself be incriminating, and cannot give rise to probable cause for its seizure when no drugs are visible. Defendant relies upon an out-of-state case, *Hoey v. State,* 73 Ark.App. 118, 42 S.W.3d 564 (2001), to support his argument that the vial was improperly seized. In *Hoey,* the suspect was searched during a traffic violation. *Id.* at 566. The investigating officer was aware that the suspect had previously been convicted of methamphetamine possession, and when asked to empty his pockets, the suspect retrieved four wooden tubes used to ingest methamphetamine. *Id.* at 566–67. The officer also observed the corner of a plastic bag protruding from Defendant's watch pocket, but not the contents of the bag. *Id.* at 567. The officer seized the bag and found crystal methamphetamine. *Id.* The appellate court suppressed the evidence, determining that the plastic bag alone, without any indication of its contents, could not have caused the officer to believe there was evidence of a crime. *Id.* at 568.

{12} Responding to *Hoey,* the State emphasizes the officer's testimony in the present case that he was familiar with the use of glass vials as drug vessels and knew of Defendant's recent involvement with drugs. Considered as a whole, the State argues that

this information, coupled with the officer's observations at the scene, gave the officer probable cause to believe the vial likely contained evidence of a crime or was itself drug paraphernalia. Urging this Court to reject *Hoey*, the State relies instead upon *State v. Miles*, 108 N.M. 556, 775 P.2d 758 (Ct.App. 1989), a case in which a police officer stopped a vehicle for speeding, and then, upon shining his flashlight into the vehicle, the officer observed a brown wooden box, distinctive in appearance, lying on the seat. Based on his law enforcement experience, the officer "readily recognized [the box] as being drug paraphernalia," with a place for a pipe and a compartment for marijuana. *Id.* at 557, 775 P.2d at 759. The officer seized the box, opened it, and found contraband. Our Court of Appeals concluded in *Miles* that because the box was in plain view and its incriminating nature was immediately apparent to the officer, he had probable cause to seize it without a warrant.

■ {13} In our view, the present case more closely resembles the holding in *Miles*. Objects commonly associated with particular criminal activities can reasonably give rise to inferences that are distinct from objects ordinarily used for benign, non-criminal purposes. An officer's experience and training, considered within the context of the incident, may permit the officer to identify drug paraphernalia or drug packaging with a reasonable level of probability, sufficient for probable cause. *See Steinzig*, 1999–NMCA–107, ¶ 29, 127 N.M. 752, 987 P.2d 409; *Miles*, 108 N.M. at 559, 775 P.2d at 761. "[I]t is beyond dispute that cocaine is commonly distributed as a powder in small vials and envelopes." *United States v. Wick*, 52 F.Supp.2d 1310, 1320 (D.N.M.1999) (quoting *United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir.1990)). In this case the officer not only drew upon his own experience regarding vials as drug paraphernalia, but he knew of Defendant's prior involvement with drugs. These factors properly inform the determination of whether there was probable cause to justify the seizure of the vial. *Ball v. United States*, 803 A.2d 971, 981 (D.C.2002) (stating officer's expertise in narcotics, including drug packaging, was an important element in the court's determination that the officer had probable cause to seize a large cylindrical container from the defendant's pocket).

■ {14} In drawing parallels between the instant case and *Miles*, we nonetheless concur with Defendant's primary point that, in the main, an officer's mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure. *See State v. Vasquez*, 112 N.M. 363, 368, 815 P.2d 659, 664 (Ct.App. 1991) (indicating diaper bag taken from a vehicle was unlawfully seized pursuant to the plain view doctrine because the contents "could not be discerned from the bag's outward appearance," and thus the incriminating nature of the bag was not apparent); *State v. Zelinske*, 108 N.M. 784, 786–87, 779 P.2d 971, 973–74 (Ct.App.1989) (recognizing presence of a heavily taped cardboard box and deodorizer in the trunk of a vehicle did not give probable cause to justify its seizure under the plain view doctrine; these items "are used much more frequently for entirely innocent purposes than for transporting narcotics"), *overruled on other grounds by State v. Bedolla*, 111 N.M. 448, 806 P.2d 588 (Ct. App.1991).

{15} We are persuaded, however, that the instant case is sufficiently distinct on its facts to give rise to probable cause. We are equally persuaded about factual differences between our case and *Hoey*, where the Arkansas court focused on the officer's testimony "that he saw only plastic protruding from Hoey's pocket, with no indication that it contained a white substance or anything else." 42 S.W.3d at 568. Furthermore, to the extent that *Hoey* intimates a broader holding, that probable cause is limited to what the officer sees in plain view without considering either context or training and experience, we respectfully disagree. We disavow any such proposition as inconsistent with New Mexico law.

{16} In addition to disputing probable cause based on what the officer saw, Defendant also argues for a higher standard than probable cause to justify seizing the vial. Defendant argues that an officer must be virtually certain of a container's illicit contents, beyond mere probable cause, before

subjecting it to search and seizure. Ironically, Defendant relies upon *Miles,* 108 N.M. at 559, 775 P.2d at 761 for this proposition, but in so doing Defendant's reliance is misplaced.

{17} *Miles* clearly stands for the proposition that only probable cause to believe that a container holds contraband or evidence of a crime is required for an officer to *seize* the container without a warrant. *Id.* at 558, 775 P.2d at 760. The officer in Defendant's case reasonably recognized the vial as commonly containing drugs, just as the officer in *Miles* recognized the wooden box as drug paraphernalia typically containing marijuana. The seizure of the vial was lawful.

{18} However, unlike *Miles,* after seizing the vial, the officer did not proceed immediately to a warrantless *search* of its contents, or try to justify the search based on the revealing characteristics of the container. Instead, the officer properly continued his investigation, asking Defendant to identify the contents, and when Defendant did so, he incriminated himself. Accordingly, the views stated in *Miles* about inferences to be drawn from a container's packaging, sufficient to justify a warrantless search of the container, simply do not apply to the present case.

**CONCLUSION**

{19} We affirm the denial of Defendant's motion to suppress the vial and its contents.

{20} **IT IS SO ORDERED.**

MAES, Chief Justice, MINZNER, SERNA and CHAVEZ, Justices, concur.