This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38073

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANDRES CARRERAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Andres Carreras appeals the district court's denial of his motion to suppress evidence. Defendant contends that, prior to his arrest, he was illegally seized by law enforcement, and therefore the evidence found after his arrest must be suppressed. Specifically, Defendant argues that because he was merely a passenger in a vehicle stopped for a routine traffic violation, the officer seized him illegally when he

was ordered to return to and remain in the car during the initial moments of the stop. We disagree and therefore affirm.

## BACKGROUND

**{2}** Las Cruces Police Officer Manuel Frias learned that a gold GMC Yukon was driving with an expired registration tag. After some unsuccessful attempts to get close enough to the vehicle to effectuate a stop, Officer Frias was eventually able to get behind the Yukon and engage his emergency lights and siren. After he did so, the vehicle very briefly sped up before it pulled over and came to a stop.

**{3}** As Officer Frias got out of his police vehicle, both doors on the passenger side of the Yukon opened and two people, one of whom was Defendant, exited on foot. Officer Frias later testified that, in his experience, passengers trying to exit a vehicle immediately upon being pulled over was "not normal behavior." Officer Frias ordered the passengers several times to "stay in the car," and they complied by returning to the Yukon. Defendant's departure from the car, and his subsequent return, transpired in a matter of seconds. Officer Frias then called for assistance, and Officer Nathan Krause arrived at the scene around a minute later.

**{4}** During the stop, officers discovered active warrants for Defendant's arrest. After he was formally arrested, a search of Defendant at the detention center revealed methamphetamine. The State charged him with possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021). He moved to suppress the methamphetamine evidence, and the district court denied the motion. He entered a conditional guilty plea, expressly reserving his right to appeal the denial of his motion to suppress.

## DISCUSSION

**{5}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). This Court reviews "factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

**{6}** "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"[1] *Lange v. California*, 141 S. Ct. 2011, 2017 (2021). Whether a seizure is reasonable

1Defendant cites both the Fourth Amendment of the United States Constitution as well as Article II, Section 10, of the New Mexico Constitution. Although he states that the state constitutional provision provides greater protection than its federal counterpart, especially in the automobile context, he does not develop a discrete state constitutional argument in the context of his seizure analysis, nor does he assert that the state constitution provides an independent basis for reversal on the seizure issue. Rather, as it pertains to the necessity of reasonable suspicion to support the seizure, Defendant acknowledges that "[o]ur courts have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses." As such, "we assume without

generally "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

**{7}** There is no dispute in this case that Officer Frias had a lawful basis to stop the GMC Yukon in which Defendant was a passenger based on the expired registration tag. *See* NMSA 1978, § 66-3-18(B)-(C) (2018) (prohibiting driving with invalid vehicle registration). There was therefore no impropriety in the initial seizure of the vehicle and its occupants. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of [a traffic] stop."). Because the traffic stop was lawful, the only question before us is whether it was reasonable for Officer Frias to order Defendant, who was a passenger, to "stay in the car."[2]

**{8}** Defendant's argument rests on the premise that courts analyze the initial constitutionality of traffic stops under the reasonable suspicion analysis provided by *Terry v. Ohio*, 392 U.S. 1 (1968). *See State v. Leyva*, 2011-NMSC-009, ¶ 10, 149 N.M. 435, 250 P.3d 861 ("[C]ourts generally analyze traffic stops under *Terry*."). Under *Terry*, a traffic stop is constitutionally reasonable at its inception if it is supported by "reasonable suspicion" that the law is being or has been broken. *See, e.g.*, *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186. Defendant then argues—citing a non-automobile case—that "reasonable suspicion is a *particularized* suspicion, based on all the circumstances that *a particular individual*, the one detained, is breaking, or has broken the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (emphasis added). Putting these points of law together, Defendant concludes that because there was no *particularized* reasonable suspicion to believe that he—a passenger—was involved in any unlawful activity related to the initial basis for the traffic stop, his seizure during the investigatory detention was unreasonable and therefore unconstitutional. This line of reasoning leads Defendant to assert that automobile passengers have a "right" to "leav[e] traffic stops that do not involve them."

**{9}** The State challenges a basic premise of Defendant's argument: namely, that particularized reasonable suspicion is required for each individual passenger at the outset of a traffic stop. The relevant inquiry, according to the State, is not whether there was particularized reasonable suspicion as to each individual occupant of the vehicle, but instead whether the seizure as a whole was reasonable based on a balance of competing interests. *See, e.g.*, *Brignoni-Ponce*, 422 U.S. at 878 (explaining that the propriety of seizures is a "balance between the public interest and the individual's right

---

deciding that both constitutions afford equal protection to individuals against unreasonable seizures in this context, and we analyze the constitutionality of the seizure under one uniform standard." State v. Ochoa, 2004-NMSC-023, ¶ 6, 135 N.M. 781, 93 P.3d 1286.

2We decline to address a question that Defendant raised for the first time in his reply brief: whether the officers had sufficient reasonable suspicion to ask Defendant for his identifying information during the police encounter. Because Defendant did not raise this issue in his brief in chief, and his passing references to it in the reply brief lack any specific legal argument, we do not consider the question. See, e.g., Elane Photography, LLC v. Willock, 2013-NMSC-040, ¶¶ 70-71, 309 P.3d 53 (declining to consider an appellant's underdeveloped argument).

to personal security free from arbitrary interference by law officers"). To support the use of this analytical approach in this context, the State cites and discusses automobile seizure cases from the United States Supreme Court. We find the State's approach persuasive. Because we conclude that the holdings of these cases cannot be reconciled with Defendant's view that particularized reasonable suspicion is required to justify the seizure of each individual passenger in a vehicle pulled over for a routine traffic violation, we analyze the seizure of Defendant under the State's framework. Ultimately, we agree that Defendant's seizure was reasonable because officer safety concerns justified a brief de minimis detention.

**{10}**    A key precedent that guides our analysis is *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997), in which the Supreme Court held that an officer conducting a traffic stop may, as a matter of course, order a passenger out of the vehicle without the need for individualized reasonable suspicion that the passenger has been involved in a crime. *See also Brendlin v. California*, 551 U.S. 249, 258 (2007) (recognizing that "during a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk"). In balancing the interests at stake, the Supreme Court recognized that the state has a "weighty interest in officer safety" and that traffic stops may involve dangerous encounters. *Wilson*, 519 U.S. at 413. Importantly, the Court recognized that the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Id.* at 414. On the other side of the reasonableness balance, the Court concluded that the additional intrusion on the passenger's liberty interest was minimal. *See id.* at 413-14 (recognizing that "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle" and "[t]he only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car").

**{11}**    We believe the analysis in *Wilson* supports affirmance here. As it relates to an intrusion on Defendant's liberty interest, the facts in this case differ from those in *Wilson* only in that here the passenger, Defendant, was ordered to remain in the vehicle rather than to get out of it. Defendant has not persuasively argued that there is a constitutionally significant distinction between the two scenarios; in both, the intrusion on the passenger's liberty appears minimal. The command that Defendant remain in the vehicle merely maintained the status quo at the time of the initial traffic stop. That is, Defendant was required only to stay in a place he had been voluntarily occupying, and where he had already been reasonably seized by virtue of the valid traffic stop. *See Johnson*, 555 U.S. at 333. There appears, in short, no greater intrusion than that deemed minimal in *Wilson*. *See* 519 U.S. at 415. On the other side of the reasonableness balance, we believe the interest in officer safety here is equivalent to that described in *Wilson*. The same dangers to officer safety were present, and Officer Frias's command that Defendant "stay in the car" at the very inception of the routine traffic stop is a reasonable precautionary measure that accords with the basic purposes of law enforcement and helps ensure officer safety.[3] *See State v. Lovato*, 1991-NMCA-

---

3While we reject Defendant's categorical claim that passengers have a "right" to "leav[e] traffic stops that do not involve them," we do not reach the question of whether a passenger in a vehicle pulled over for a

083, ¶ 26, 112 N.M. 517, 817 P.2d 251 ("Even in routine traffic stops, police may adopt precautionary measures addressed to reasonable fears.").

**{12}**    For these reasons, we hold that the minimal intrusion on Defendant's liberty occasioned by the order that he "stay in the car" at the outset of the stop was reasonable, and that individualized reasonable suspicion that Defendant was engaged in criminal activity was not necessary.

**CONCLUSION**

**{13}**    We affirm.

**{14}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge**

---

traffic violation may be routinely detained for the entire duration of a routine traffic stop in all circumstances.