The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 9, 2025

**NO. S-1-SC-40187**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**SANDRA PERRY,**

      Defendant-Appellant.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Thomas Stewart, District Judge**

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Van Snow, Deputy Solicitor General
Santa Fe, NM

for Appellee

**OPINION**

**BACON, Justice.**

{1}	In 2019, New Mexico joined a growing number of state jurisdictions in decriminalizing—but not legalizing—the possession of small amounts of marijuana. Specifically, the Legislature's 2019 amendments to the Controlled Substances Act (CSA) provided for a noncriminal penalty (a fine alone) in the case of a defendant's possession of one-half ounce of marijuana or less, NMSA 1978, § 30-31-23(B)(1) (2019, amended 2021), whereas the prior version of the statute treated first-time possession of similar amounts of marijuana as a petty misdemeanor punishable by a fine and imprisonment. Section 30-31-23(B)(1) (2011). The change in legal status brought about by the 2019 legislative amendments was brief in duration, as Section 30-31-23 was again amended in 2021, this time to remove altogether adult possession and recreational use of marijuana from the reach of the CSA in accordance with the Cannabis Regulation Act's then recently enacted marijuana legalization provisions. *See* NMSA 1978, § 26-2C-25(A)(1) (2021) (making it "lawful for a person who is twenty-one years of age or older" to "possess[], us[e], be[] under the influence of, display[], purchas[e], obtain[] or transport[] not more cannabis than authorized by the Cannabis Regulation Act or the medical cannabis program").

{2}      The narrow question presented here, as certified by the Court of Appeals, is whether this Court's criminalization-era caselaw holding that "[t]he smell of marijuana alone can satisfy the probable cause requirement for a warrantless search [of a vehicle]," *State v. Capps*, 1982-NMSC-009, ¶ 12, 97 N.M. 453, 641 P.2d 484, remains good law as applied "in the context of decriminalized, but not-yet-legalized, possession of small amounts of marijuana." Order of Certification to the New Mexico Supreme Court at 3, *State v. Sandra Perry*, A-1-CA-40097 (N.M. Ct. App. Nov. 21, 2023). Based on the parties' briefing to this Court, and as explained herein, we discern no basis on which to conclude that the *Capps* holding was rendered invalid as a result of the 2019 legislative transition from a marijuana criminalization framework to a marijuana decriminalization framework.[1] In keeping with this Court's recent recognition that our role in the certification process is to address "issues rather than cases," *State v. Mares*, 2024-NMSC-002, ¶¶ 2, 46, 50-52, 543

---

[1]Despite the State's present objections, we address the merits of the Court of Appeals certified question which, though temporally narrow in scope, deserves an answer for the benefit of those criminal defendants who were subject to vehicle searches based on the smell of marijuana during this in-between, decriminalization phase of the Legislature's multistep shift from marijuana criminalization to marijuana legalization. Order of Certification to the New Mexico Supreme Court at 3, *Perry*, A-1-CA-40097 (noting that the proper resolution of Defendant's pending direct appeal "depends on the continued applicability of . . . *Capps* . . . in the context of decriminalized, but not-yet-legalized, possession of small amounts of marijuana").

P.3d 1198, we answer the lone certified question now before us in the affirmative and remand the matter to the Court of Appeals for its own review and determination of the suppression appeal as a whole.

## I.   FACTS AND PROCEDURAL HISTORY

{3}   A brief recitation of the facts and procedural background of this case will suffice to place the certified question in proper perspective. In November 2020, the arresting police officer lawfully stopped a truck driven by Defendant-Appellant Sandra Perry (Defendant) after observing Defendant commit a series of traffic violations. Upon approaching the driver's side window, the officer detected a strong odor of marijuana emitting from the vehicle. Based primarily on the smell of marijuana, the officer asked Defendant for permission to search the truck. After some hesitation and further discussion with the officer, Defendant consented. The police search yielded a bag containing an amount of marijuana subject to a noncriminal penalty (a fine alone), a bag of methamphetamine, and glass pipes commonly used to smoke methamphetamine.

{4}   In the ensuing criminal prosecution, Defendant moved to suppress the fruits of the search wherein Defendant argued, as here relevant, that police lacked probable cause to believe that Defendant's vehicle contained "more than one-half ounce of marijuana" or other "evidence of a crime" and that, in result, Defendant's consent to

the search was coerced by warnings that her vehicle would be towed and searched if she refused consent to a warrantless search. The State, in response, relied in part on this Court's ruling in *Capps* to argue that the odor of marijuana itself was sufficient to satisfy the probable cause requirement for the police to search the vehicle. The district court denied suppression, agreeing with the State that the smell of marijuana emanating from Defendant's vehicle was alone sufficient to provide probable cause for a vehicle search, even though no finite amount of marijuana "could be presumed to be present." Based on the evidence obtained as a result of the vehicle search, a jury convicted Defendant of all submitted counts.[2]

{5}     Defendant challenged the denial of her suppression motion on direct appeal to the Court of Appeals, reiterating the claim that "because there was no probable cause that an amount of marijuana was present sufficient to constitute a crime," her consent to the vehicle search "was illegally coerced." In lieu of deciding the appeal on the merits, the Court of Appeals appropriately certified to this Court the question whether *Capps* is properly applied here in view of the recent changes to the relevant statutory landscape. Order of Certification to the New Mexico Supreme Court at 5-6, *Perry*, A-1-CA-40097; *see State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M.

---

[2]The State previously dismissed the marijuana possession charge by way of nolle prosequi.

4

621, 674 P.2d 511 (emphasizing that the Court of Appeals is "governed by the precedents of th[e Supreme] Court" and encouraging the Court of Appeals to certify to this Court questions relating to the continued applicability of one of this Court's precedents).

## II.     ANALYSIS

{6}     Defendant urges us—in the postdecriminalization, prelegalization setting of this case—to abandon the *Capps* holding that the "[t]he smell of marijuana alone can satisfy the probable cause requirement for a warrantless search." 1982-NMSC-009, ¶ 12. Defendant suggests that the smell of an undetermined amount of marijuana lost its standalone relevance in the probable cause arena once the Legislature decriminalized the possession of small amounts of marijuana because a police officer administering a vehicle stop during the decriminalization period would necessarily be uncertain as to whether evidence of criminality is afoot. Importantly, Defendant's premise relies on an overly broad reading of this Court's opinion in *State v. Nyce*, in particular the statement therein that "[m]ere suspicion about ordinary, non-criminal activities, regardless of an officer's qualifications and experience, does not satisfy probable cause." 2006-NMSC-026, ¶ 14, 139 N.M. 647, 137 P.3d 587, *overruling on other grounds recognized by State v. Haidle*, 2012-NMSC-033, ¶ 10, 285 P.3d 668. Under that reading, Defendant points to a series of

5

cases recognizing that officer suspicion alone regarding ordinary, noncriminal activities does not provide probable cause for a search. *See, e.g.*, *State v. Sanchez*, 2015-NMCA-084, ¶ 22, 355 P.3d 795 (noting that without more, "[d]efendant's attempt to conceal the bag on the floorboard containing pills that may or may not have been lawfully possessed" did not elevate officer suspicion to probable cause); *State v. Anderson*, 1988-NMCA-033, ¶¶ 15-18, 107 N.M. 165, 754 P.2d 542 (holding probable cause was not established merely by "five profile factors slapped together by the officer": "defendant was traveling east; he had slept at a rest stop; he had no luggage visible in the car except a carry-on bag; he had a box of Kentucky Fried Chicken in the car with him; and he was nervous").

{7}    As we explain, Defendant's position under *Nyce* does not avail and indicates no infirmity in *Capps*. First, nothing in *Nyce* supports Defendant's implication that possession of small amounts of marijuana during the relevant period—such possession still being contrary to law—constituted *ordinary, non-criminal activities*. In *Nyce*, we considered whether the defendant's purchase "in a lawful yet suspicious manner" of two legal products, tincture of iodine and hydrogen peroxide, both of which are ingredients in the manufacture of methamphetamine, was accompanied by incriminating circumstances "significant enough to give rise to probable cause." 2006-NMSC-026, ¶¶ 13-14. In critical distinction from the instant case, the

"ordinary, innocent facts" alleged in *Nyce* required further analysis to determine whether probable cause existed that the defendant "would use those [legal purchases] for an illicit purpose." *Id.* ¶¶ 14, 19. That is, further inquiry was necessary to determine probable cause where "both the purchase and its manner [were] equally consistent with *legal* activity." *Id.* ¶ 14 (emphasis added). In contrast here, the odor of marijuana in Defendant's vehicle was inherently incriminating, and possession of marijuana during the relevant period in any quantity was illegal. Consequently, the activity in question here does not constitute "ordinary, innocent facts" within the meaning of *Nyce*, and the further analysis in *Nyce* on which Defendant relies is not required or warranted in this context. In the same vein, Defendant's citations to other cases following the reasoning in *Nyce* are likewise inapposite. In short, Defendant's analogizing to *Nyce* casts no doubt on the applicability of *Capps* for the decriminalization period.

{8}    Further, Defendant ignores our statement in *Nyce* that "[t]he Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or *seizable evidence exists* . . . before a search warrant may issue." 2006-

7

NMSC-026, ¶ 9 (emphasis added);[3] *accord State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376 (same). As above, the odor of marijuana was inherently incriminating during the relevant period, supporting the reasonable inference that seizable evidence, regardless of quantity, existed within Defendant's vehicle. *See Nyce*, 2006-NMSC-026, ¶ 10 ("Probable cause exists when there are reasonable grounds to believe an offense has been or is being committed in the place to be searched."). Indeed, this Court went further in *Williamson* and struck a related chord, stating that "an issuing court's determination of probable cause must be upheld 'so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing[;] the Fourth Amendment requires no more.'" 2009-NMSC-039, ¶ 17 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)) (text only).[4]

---

[3]Our probable cause analysis in this matter is properly informed by caselaw addressing warrantless searches as well as warranted searches, since "we apply the same rationale" to both. *State v. Martinez*, 1980-NMSC-066, ¶ 11, 94 N.M. 436, 612 P.2d 228, This is so, even though we strongly favor the use of the warrant alternative. *See State v. Gurule*, 2013-NMSC-025, ¶ 16, 303 P.3d 838 (noting the "strong [judicial] preference for searches conducted pursuant to a warrant" (internal quotation marks and citation omitted)).

[4]"(Text only)" indicates the omission of nonessential punctuation marks— including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

{9}     We note Defendant's position ignores this Court's precedent endorsing an overlapping but distinct probable cause approach, one that examines whether any given item found and seized by police is "*contraband* or evidence of a crime." *State v. Ochoa*, 2004-NMSC-023, ¶ 17, 135 N.M. 781, 93 P.3d 1286 (emphasis added). As shown below, the use of the phrase *contraband or evidence of a crime*, or like terminology, in the probable cause realm generally signals an "understanding that the two [disjunctive terms are] not identical and that probable cause to believe . . . the presence of either could justify an automobile search." *State v. Smalley*, 225 P.3d 844, 847-48 (Or. Ct. App. 2010) (upholding a vehicular search of a backpack prompted by police detection of the odor of marijuana following a lawful traffic stop, under a statutory scheme providing that possession of marijuana in an amount less than an ounce was not a crime).

{10}     Particularly instructive on this point is the "straightforward" logic employed by the Court of Appeals of Maryland[5] in its thorough analysis of a parallel issue in *Robinson v. State*, 152 A.3d 661, 680-87 (Md. 2010). In *Robinson*, Maryland's highest court discussed in depth the impact that state's decriminalization of small

---

[5]"The Court of Appeals was renamed the Supreme Court of Maryland on December 14, 2022 by constitutional amendment ratified by the voters, November 8, 2022." https://msa.maryland.gov/msa/mdmanual/29ap/html/aph.html (last visited July 7, 2025).

amounts of marijuana had on warrantless automobile searches based on the smell of marijuana. Relying heavily on the premise that "[d]ecriminalization is not the same as legalization," the *Robinson* Court held that "possession of marijuana in *any* amount remains illegal in Maryland" under the state's partial decriminalization scheme. *Id.* at 680. Central to that holding was the *Robinson* Court's recognition that the terms *contraband* and *evidence of a crime* are not synonymous, a view supported by the "plain meaning" of the word *contraband* as reflected in both legal and common dictionary definitions. *Id.* at 682. The Court explained as follows:

> Significantly, the words "crime" and "criminal" do not appear in the definitions of "contraband" in both Black's Law Dictionary and Merriam-Webster. Black's Law Dictionary defines contraband, in relevant part, as "goods that are *unlawful* to import, export, produce, or possess." Contraband, Black's Law Dictionary (10th ed. 2014) (emphasis added). Similarly, Merriam-Webster defines contraband, in relevant part, as "goods or merchandise whose importation, exportation, or possession is *forbidden*." Contraband, Merriam-Webster, http://www.merriam-webster.com/dictionary/contraband [https://perma.cc/PDL8-V83L] (emphasis added). These definitions support the conclusion that marijuana in any amount constitutes contraband.

*Robinson*, 152 A.3d at 682 (brackets omitted). The *Robinson* Court thus determined that, despite decriminalization, "marijuana in any amount, no matter how small, is contraband," 152 A.3d at 683, and well summed up the point by stating that, "for purposes of probable cause, there is no distinction between the significance of a

10

criminal amount of marijuana versus the significance of a noncriminal—but still illegal—amount of marijuana." *Id.*

{11} We adopt this same reasoning in rejecting the central premise of Defendant's argument here. Stated as simply as we can, the decriminalization of possession of small amounts of marijuana in New Mexico did not alter the reality that the possession of marijuana in any amount continued to be unlawful during the decriminalization period—whether marijuana is viewed merely as *contraband*, *see Ochoa*, 2004-NMSC-023, ¶ 17, or more broadly as *seizable evidence*, *see Williamson*, 2009-NMSC-039, ¶ 14; *Nyce*, 2006-NMSC-026, ¶ 9. Thus, under this reasoning, *Capps* remains good law for the relevant period.

{12} In another vein, Defendant points to the fact that *Capps* was decided under Fourth Amendment principles and encourages this Court, here and now, to determine whether the New Mexico Constitution may provide greater protection. We decline Defendant's invitation, for it strays well beyond the narrow contours of the certified question now before us. *See City of Las Cruces v. El Paso Elec. Co*, 1998-NMSC-006, ¶ 13, 124 N.M. 640, 954 P.2d 72 (recognizing that this Court "construes . . . certified question[s] narrowly"). It should be noted that nothing precludes the Court of Appeals from itself considering the state constitutional issue upon remand, assuming that Court were to establish that the issue was properly

11

preserved in the district court, *see Mares*, 2024-NMSC-002, ¶¶ 27-29, and adequately briefed on direct appeal by the parties, *see State v. Willie*, 2009-NMSC-037, ¶ 7, 146 N.M. 481, 212 P.3d 369.

## III. CONCLUSION

{13}     In the absence of any cognizable basis to determine otherwise, we conclude that the rule formulated in *Capps* that "[t]he smell of marijuana alone can satisfy the probable cause requirement for a warrantless search," 1982-NMSC-009, ¶ 12, is properly applied in the postdecriminalization, prelegalization setting of this case. We thus answer the certified question before us in the affirmative. In accordance with this ruling, we remand the case to the Court of Appeals for proceedings consistent with this opinion.

{14}     **IT IS SO ORDERED.**

_____
**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**

13